WILLIAM O. ROWLAND & another *vs.* GEORGE H. MADDOCK & others.

Suffolk.   January 22, 23, 1903. — May 22, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Pleading and Practice,* Demurrer, Costs.   *Assignment,* For benefit of creditors.   *Equity Jurisdiction,* To compel an accounting.

On demurrer to a bill in equity brought by a creditor of an absconding debtor against a committee of creditors to recover and distribute the debtor's property, if the bill alleges, that the defendants have performed their obligations to all creditors other than the plaintiff and have received discharges from them, so that none of the other creditors are interested in the suit, the defendants, having admitted these allegations by their demurrer, cannot take the ground that the bill should have been brought in behalf of all the creditors.

In a suit in equity for an accounting, by a creditor of an absconding debtor against a committee of creditors to recover and distribute the debtor's property, it appeared, that the plaintiff refused to accept without an accounting a check sent to him by the defendants as a final dividend.   By a final decree for the plaintiff the defendants were directed to pay interest on the amount of the final dividend for which the check was sent and on the plaintiff's share of the balance found to be due in their hands.   *Held,* that being in fault in not accounting to the plaintiff, and in not declaring a dividend of all the funds in their hands for distribution, the defendants could not complain of being charged with interest from a date at least as early as the bringing of the bill.

A committee to recover the money of an absconding debtor and distribute it among his creditors cannot pay out of the fund a gratuity to police officers for having performed their duty in bringing back the debtor and the money.

In a suit in equity for an accounting, by a creditor of an absconding debtor against a committee of creditors to recover and distribute the debtor's property, it appeared, that the plaintiff refused to accept as payment, without an accounting, a check sent to him by the defendants as a final dividend, but retained the check in his possession unindorsed, until it appeared at a hearing before a master that more than the amount of the check was due to the plaintiff when he surrendered it to the master.   *Held,* that such a retaining of the check was not like a retaining of money and did not preclude the plaintiff from maintaining his bill.

A committee of the creditors of an absconding debtor, for the benefit of themselves and other creditors, to recover and distribute the debtor's property, are entitled to a reasonable compensation for their services in causing the debtor, who had gone to Canada carrying his property with him, to be brought back together with a large sum of money, resulting in a dividend to creditors of over fifty-two per cent, and for their services in distributing this sum.   The right to such compensation is not forfeited, because the committee were wrong in refusing to render a proper account and in paying a gratuity to the police officers who brought the debtor back from Canada, there being no claim of dishonest or fraudulent conduct in the custody of the money which came to their hands or otherwise.

The fact that the costs prescribed by the Legislature are not in reality an indemnification is no ground for allowing the prevailing party in a suit in equity to recover his expenses for counsel fees.

In a suit in equity for an accounting, against a committee for the benefit of creditors, who have made what purported to be a final distribution of the funds for which they were accountable, the fact, that the creditors other than the plaintiff have made no claim to any share in further funds for which the defendants are accountable or have released their rights to any such share, does not enlarge the plaintiff's rights, and he can recover only his *pro rata* share in any balance for distribution which he shows to exist in the hands of the defendants.

LORING, J.  This is a bill in equity by two creditors of one Tebbitt, an absconding debtor, against the defendants, who, as a committee of Tebbitt's creditors, had undertaken to recover from him his property and distribute it among such creditors as assigned their claims to them.

The defendants demurred to the bill of complaint, the demurrer was overruled and an appeal taken.  An answer was then filed, the case went to a master, seven exceptions were taken by the defendants, and an interlocutory decree was made sustaining four of the seven.  From this the plaintiffs took an appeal, the suit went back to the master under the interlocutory decree, and the plaintiffs took exceptions to the supplementary report, which were overruled.  A final decree was entered and appeals taken by both parties.

The first point made by the defendants is that they are entitled to the costs of the appeal because they made an offer of judgment in the amount of the decree.  That point is not before us.  The record does not disclose any offer of judgment on their part.

The facts found by the master are that the plaintiffs were creditors of one Tebbitt, who absconded from the Commonwealth with a large amount of money, bonds and other property. A meeting of his creditors was held, at which the plaintiffs were represented, and the defendants were appointed a committee, with full powers.  The committee met and wrote to the plaintiffs asking them to contribute to the expenses of collecting the plaintiffs' claim and bringing Tebbitt to justice.  At the request of the committee all creditors who were to be represented by them, including the plaintiffs, assigned their claims against Tebbitt to them.  Criminal proceedings were instituted against Tebbitt, he was arrested at Regina in Canada, extradited and

brought back to the Commonwealth by an agent of the Commonwealth, who took possession of and brought here certain money and property found in Tebbitt's possession at the time of his arrest. This property was handed over to the defendants and distributed by them. The claims of all the creditors represented by the defendants amounted to $43,114.38, and the amount realized from Tebbitt's property was $29,967.73. The committee paid a first dividend of forty per cent, a second of seven per cent, and a third of five per cent. The plaintiffs accepted the first two dividends, but on receiving a check for the last one they held it and wrote to the defendants for a statement of their account. This was on January 10, 1899. The committee received the letter but determined not to answer it nor to send the statement requested by the plaintiffs. But on February 4, after a personal interview between the plaintiffs' counsel and two of the committee, a short and inadequate statement was sent to the plaintiffs. A more detailed statement was asked for by the plaintiffs, on February 4 and 11, and May 8, and the plaintiffs offered to send some one to copy the account from the books of the defendants, or to pay the expense of such a copy made by the defendants. To the last request one of the committee wrote that Tebbitt's affairs had been properly settled and that he had "no further time to give to the matter." A proper account was again requested on June 9, to which no answer was sent or received, and on June 28 this bill for an account was brought. The check for the final dividend was held by the plaintiffs undorsed, and was surrendered to the master after an account had been elicited from the defendants for the first time, in their examination in this suit. The master found that the defendants had on hand a balance of $20.66, which was acknowledged by them. He disallowed the payment of $500, paid to one of the defendants for going to Canada to identify Tebbitt, in addition to $500 retained by each defendant (amounting in all to $2,000) as compensation for services on the committee; he disallowed all payments for compensation for the services of the defendants, and also one of $500, paid as a gratuity to the members of the police force for services in bringing Tebbitt from Canada in pursuance of their duty as such.

On the argument of exceptions taken by the defendants to

this report, an interlocutory decree was entered, declaring that the defendants were entitled to compensation for their services, including the service of the defendant Gormley in going to Canada, and declaring that the plaintiffs were entitled to their *pro rata* share of the balance found by the master to be in the hands of the defendants according to the proportion which their claim against Tebbitt bore to the total amount of all claims against him entitled to share in the funds held by the defendants. The case was sent back to the master, who made a supplementary report fixing the compensation of the defendants at $500. On this a final decree was entered as already stated, and the case is here on appeals by both plaintiffs and defendants.

We will first deal with the questions raised by the appeal of the defendants.

1. The only objection raised by the demurrer and now insisted on is that the bill should have been brought in behalf of all creditors. But it is alleged in the amended bill of complaint that the defendants " have fully performed their obligations in the premises to all other creditors of said Tebbitt and received acquittance and discharge therefrom, so that none of the said creditors other than the complainants are now interested in the premises." The defendants argue that this allegation is not binding on other creditors. But it was admitted by the demurrer. Under that admission there were no creditors other than the plaintiffs in whose behalf a complaint could be brought, and this objection is groundless.

2. By the final decree the defendants were directed to pay interest on the amount of the final dividend for which a check was sent to the plaintiffs, and on the plaintiffs' share of the balance found to be due in their hands. The defendants were in fault in not accounting to the plaintiffs, and in not declaring a dividend of all the funds which were in their hands for distribution. Had they performed their duty, the plaintiffs would have received the money found to be due them by the final decree at least as early as the date of bringing the bill, and they cannot complain of being charged with interest from that date.

3. The defendants' contention that the committee had a right to vote that a gratuity to members of the police force for doing their duty as such after that had been performed should be paid

out of a fund held by them in trust for creditors, is too plain for discussion. In our opinion the contention is frivolous.

4. There is nothing in the defendants' contention that the plaintiffs were precluded from maintaining this bill by their conduct in retaining the defendants' check for the final dividend unindorsed while demanding in vain an accounting to which they were entitled. It is not a case where they were retaining money.

5. The first exception raised by the appeal of the plaintiffs which has been argued by them, is to the allowance of compensation for the services of the defendants in collecting from the absconding debtor, who had gone to Canada carrying his property with him, an amount which resulted in the distribution of $29,947.07, after paying all expenses, and for their services in distributing this sum among the creditors who had intrusted their claims to them for collection, which sum yielded to the creditors a dividend of over fifty-two per cent.

On the facts stated in the master's report, the committee were entitled to reasonable compensation. We do not think that the statement in the letter of the secretary of the committee, dated March 9, 1898, that " we will act for your interest the same as we act for the other creditors and ourselves," imports that they were to act without compensation. And again, the statement in the preliminary agreement that the plaintiffs and other creditors will share expenses was evidently inserted to make them liable in case no funds were recovered, and does not import that under the circumstances which happened the defendants were not to have any compensation. We do not think that their right to compensation was forfeited within the rule that a trustee guilty of misconduct forfeits all right to compensation. In this case the defendants were wrong in refusing to render a proper account and in paying a gratuity to the police officers who brought Tebbitt and his property back from Canada; but there was no claim of dishonest or fraudulent misconduct in the custody of the money which came to their hands or otherwise. Among the cases cited by the plaintiffs * there is none which goes so far as we are asked to go in this case; and in *Barney* v. *Saunders*, 16 How. 535, cited by them, compensation was allowed under cir-

---

* *Cook* v. *Lowry*, 95 N. Y. 103, 114, *Lehman* v. *Rothbarth*, 159 Ill. 270, *Brooks* v. *Jackson*, 125 Mass. 307, and other cases.

cumstances much more unfavorable for the trustee in that case than those in this case.

6. There is nothing in the plaintiffs' claim to recover the expenses they have been at for counsel fees in this suit. Taxable costs are in contemplation of law full indemnity for the expenses of a party who is successful in a suit between party and party, whether at law or in equity. *Newton Rubber Works* v. *de las Casas*, 182 Mass. 436. The fact that the costs prescribed by the Legislature are not in reality an indemnification is ground for an application to the Legislature to increase them. It does not change the character of the allowance of taxable costs. Costs have been allowed to the plaintiffs in this suit, and no question has been raised by the defendants as to that.

7. The judge was plainly right in declaring that the amount found due to the plaintiffs by reason of its being found that there was a balance in the hands of the defendants for distribution was its *pro rata* share based on the proportion its claims against Tebbitt bore to all the claims against him represented by the defendants. The fact that other creditors have not claimed their share or have released their right in it to the defendants does not enlarge the plaintiffs' rights. *Blake* v. *Pegram*, 109 Mass. 541.

*Decree affirmed.*

*E. F. McClennen*, for the defendants.
*C. P. Sampson*, for the plaintiffs.