672 P.2d 284

Adolph J. MASCHIO, Plaintiff-Appellant,

v.

KAISER STEEL CORPORATION, Employer and Insuror, Defendant-Appellee.

No. 6069.

Court of Appeals of New Mexico.

Oct. 6, 1983.

Certiorari Denied Nov. 10, 1983.

Peter V. Culbert, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, for plaintiff-appellant.

Paul A. Kastler, Raton, for defendant-appellee.

## OPINION

LOPEZ, Judge.

Plaintiff appeals a judgment which awarded him limited recovery for an injury to his right knee pursuant to the schedules contained in NMSA 1978, § 52–1–43. We affirm.

The issues before this court are as follows: 1. whether plaintiff is entitled to total disability benefits for the knee alone; 2. whether substantial evidence supports the finding of partial disability; 3. whether work existed for which the plaintiff was fitted by age, experience, and training; 4. whether miserly attorney's fees were awarded; 5. whether plaintiff should have been allowed expenses and fees incurred in attending out-of-state and other discoveries requested by the defendant as costs.

POINT I: Whether plaintiff is entitled to total disability benefits for the knee injury alone.

The plaintiff contends the trial court erred in awarding only benefits due to his knee injury. He asserts that the trial court should have awarded him benefits for total disability to the body as a whole due to the knee injury. The defendant contends that the trial court was correct. The law in New Mexico is very clear regarding the

issues before this Court. On the question of total disability *Hise Const. v. Candelaria,* 98 N.M. 759, 652 P.2d 1210 (1982), ruled as follows:

If a worker is totally disabled due to an injury, then he or she is entitled to disability under Section 52–1–41, N.M.S.A. 1978, even if the disability results from the loss of or injury to a scheduled member that is enumerated under Section 52–1–43.

*Id.* at 760, 652 P.2d at 1211.

Regarding partial disability, the Court in *Hise Const.* ruled as follows:

The compensation benefits for workers who are partially disabled are contained in Section 52–1–42.

For partial disability the workmen's compensation benefits *not specifically provided for in Section 52–1–43 NMSA 1978,* shall be that percentage of the benefit payable for total disability, as provided in Section 52–1–41 NMSA 1978, as such percentage is determined by the court pursuant to the provisions of Section 52–1–25 NMSA 1978 * * *. [Emphasis added.]

This section requires that before a percentage benefit is payable, the injured worker must ascertain that his or her injury is not covered under Section 52–1–43, which states in part:

A. For disability resulting from an accidental injury to specific body members including the loss or loss of use thereof, the workman shall receive the weekly maximum and minimum compensation for disability as provided in Section 52–1–42 NMSA 1978, for the following periods * * *.

\* \* \* \* \* \*

B. For a partial loss of use of one of the body members or physical functions listed in Subsection A of this section, the workman shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function.

The scheduled injury section does not take into consideration the occupation of the worker and how the loss of the specific member of the body may affect his or her ability to perform the duties of his or her job. The schedule, for example, awards the same benefit to a piano player as to a night watchman for the loss of a finger, hand or arm.

*Id.*

In the case at bar the trial court determined in finding No. 10 that plaintiff had suffered a 50% disability (loss of use of his right leg at the knee level). It also found no other separate impairment or injury to the body. Furthermore, upon a careful reading, finding No. 11 indicates that the trial court found plaintiff's knee injury did not make him 100% disabled to the body as a whole.

11. As a natural and direct result of plaintiff's accidental injury on January 12, 1979 and the surgical procedure of July 29, 1980, plaintiff is wholly unable to perform the usual tasks in the mining job he actually was performing at the time of his injury and also is unable to some percentage-extent to perform the usual tasks in some mining jobs for which he is fitted by age, education, training, general physical and mental capacity and previous work experience. but, despite such accidental injury and surgical procedure, plaintiff is wholly able to perform the usual tasks in some mining jobs for which he is fitted by age, education, training, general physical and mental capacity and previous work experience.

The crux of plaintiff's argument is that finding No. 11 was consistent with the theory that if the claimant is 100% disabled no other impairment need be found. However, we disagree with plaintiff as to his interpretation of finding No. 11. Although the record evidence might have supported a finding of total disability, as argued by the plaintiff, the trial court chose to find him only 50% disabled at the knee level. Therefore, Section 52–1–41 (total disability) does not apply. Section 52–1–42 (partial disability) does not apply either because there was

no evidence of physical impairment other than to plaintiff's right knee.

We recognize that NMSA 1978, §§ 52–1–41, 52–1–42 and 52–1–43 may seem inconsistent and hard to understand to some lay and professional people, but these provisions are the law in New Mexico. The late Chief Justice of the United States Supreme Court, Charles Evans Hughes, in the Roosevelt era, once said "American law is sometimes hard to understand but the wealth, the might and the height of the United States could not survive without it." We acknowledge that if the trial court had found plaintiff 100% disabled to the body as a whole based on the knee injury, the limited scope of our authority on review would have compelled us to affirm. However, the trial court did not so find. The trial court's finding of only 50% disability to the knee consequently has raised an issue which reveals the perplexity of the laws.

We conclude that plaintiff's recovery is limited to the scheduled injury section under NMSA 1978, § 52–1–43. The next question is whether the trial court's finding of recovery for partial disability is supported by substantial evidence. *Barham v. Jones,* 98 N.M. 195, 647 P.2d 397 (1982). POINT II: Whether substantial evidence supports the finding of partial disability.

■ Testimony at trial showed that plaintiff has good use of his right leg. He can walk without an abnormal gait, and he is encouraged to walk, stand, do moderate exertion exercises and sports. He cannot work on the uneven ground inside a mine, but Kaiser personnel testimony indicated that he was fit by age, condition and experience to do other necessary work above ground.

Plaintiff's expert, Dr. Foote, testified that plaintiff was totally disabled due to the right knee. On cross-examination, however, Kaiser established that Foote based his opinion on both knee and back injuries. Foote had little experience in disability evaluations, and he had worked with plaintiff's counsel on previous cases.

The plaintiff contends that there is no substantial evidence to support the trial court's finding of partial disability to the knee but that the record only supports a finding of total disability to the body as a whole. We disagree with plaintiff. We conclude that the pertinent findings (findings 10, 11 and 12) are supported by substantial evidence and that the court's conclusion that plaintiff is only entitled to recover for the knee disability is correct. POINT III: Whether work existed for which Maschio was fitted by age, experience and training.

■ Plaintiff next contends that Kaiser tried to escape paying total disability by offering him "make work" employment. Granted Kaiser did not offer to put plaintiff back in the mine. However, plaintiff had worked in and about mines for all of his adult life. At the time of trial he was 63 years old. He had worked above ground in various capacities, i.e., a mechanic's assistant, loaderman, and at other beltline jobs. Kaiser's witnesses testified that plaintiff was physically able to do other tasks, including deliveries, bathhouse duties, operate mine communications systems, and work in the shop.

Along with the above summary of facts we have reviewed the entire record and conclude that there is substantial evidence to support the trial court's finding that plaintiff is fitted to perform jobs for which he is fitted by age, experience and training, general physical and mental capacity and previous work experience. POINT IV: Whether miserly attorney's fees were awarded.

■ The trial court awarded plaintiff $1,260.00 in attorney's fees in the district court. Plaintiff challenges this award on grounds that the attorney's fees are insufficient and that the trial court abused it's discretion in this matter. The plaintiff claims that his attorney has spent 155 hours on his case and that he should be awarded more money. The trial court made the following pertinent findings:

16. Within less than one month after the complaint herein was filed, defendant in writing offered and tendered to plain-

tiff weekly compensation in accordance with Sec. 52–1–43A(30) and B, NMSA 1978, and all medical benefits available, and within less than two months after the complaint was filed actually paid to plaintiff all such benefits at the 1979 rate, retroactive to May 5, 1981.

17. No issue was expressly and distinctly raised by plaintiff that defendant was paying compensation at the wrong rate, i.e., the 1979 rate instead of the 1980 rate, until the trial of this case, and that issue came as a surprise, whether or not warranted, to defendant.

18. The Court judicially notices that the maximum weekly compensation benefit prevailing in the year 1980 was $201.04, an increase from the maximum rate for the year 1979 of $186.38.

19. The only issue on which the plaintiff prevails in this case, i.e., the 1980 versus 1979 date of disability, produces little present value to the plaintiff; such issue was only incidentally tendered and directly brought to the attention of defendant only at trial; such is not a novel or complex issue; and only a modest time and effort were or could have been expended by the attorney for plaintiff in pleading, negotiating, presenting and resolving this issue. A fair hourly rate for such work is $75.00 per hour.

20. In addition, the filing of the complaint resulted in the prompt confession by defendant of its liability to pay plaintiff weekly compensation for 150 weeks for the scheduled injury, and such liability has a present value correctly computed of $15,078.00. Plaintiff's attorney had to spend a reasonable time and effort in conferring with plaintiff, ascertaining the facts preliminarily and preparing the complaint. A fair hourly rate for such work is $75.00 per hour.

21. Plaintiff's attorney performed the services mentioned in Findings of Fact Nos. 19 and 20 in total of 11.50 hours.

The matter of attorney's fees has been before this court many times. In this court's experience, attorneys, ironically, sometimes spend as much time, if not more, in proving their fee claims as they spend in proving disability for their clients.

The Supreme Court of New Mexico in *Fryar v. Johnsen,* 93 N.M. 485, 601 P.2d 718 (1979), laid down the rules upon which attorney's fees are to be awarded. We need not reiterate these rules here. Suffice it to say that we have reviewed the record before this court and we conclude that the trial court's findings and conclusions regarding the award of attorney's fees are supported by the evidence and law and that the trial court did not abuse its discretion in this matter.

POINT V: Whether plaintiff should be allowed expenses and fees incurred in attending out-of-state and other discoveries requested by defendant as costs.

Defendant paid Dr. Foote's expert witness fee of $750.00 and also paid his $286.68 appearance fee at the deposition. In addition defendant paid all the stenographers and reporters fees for taking depositions. Plaintiff claims he should also be paid for travel expenses in attending four separate depositions incurred by his attorney, as well as attorney's fees for his participation in those depositions. The issue before this court is whether the legislature, in enacting NMSA 1978 § 52–1–34, contemplated the payment of attorney's fees and travel expenses as claimed by the plaintiff. Section 52–1–34 is very clear and it only provides that court costs and expenses of discovery ordered by the court shall be paid by the defendant. It makes no mention or reference to travel expenses or attorney's fees. *See Farmers Gin Company v. Ward,* 73 N.M. 405, 389 P.2d 9 (1964); *Gregory v. Eastern New Mexico University,* 81 N.M. 236, 465 P.2d 515 (Ct.App.1970). The Supreme Court of New Mexico in *State ex rel. Stanley v. Lujan,* 43 N.M. 348, 93 P.2d 1002 (1939), held that attorney's fees and the attorney's traveling expenses are not "costs and charges" which may be properly taxed as costs or be recoverable as damages.

We conclude that the trial court award of costs was correct.

We affirm the judgment of the trial court and we order no attorney's fees for the plaintiff's attorney in this appeal.

IT IS SO ORDERED.

NEAL, J., concurs.

BIVINS, J., concurs in part and dissents in part.

BIVINS, Judge (concurring in part; dissenting in part).

I concur in Points I, II, III, IV and that portion of Point V which upholds the disallowance of separate attorneys fees for attendance by plaintiff's attorney at depositions. I disagree, however, with that part of Point V which holds that travel expenses cannot be considered as a "cost and expense" of discovery under NMSA 1978, § 52–1–34.

Plaintiff claimed as part of his cost bill $261.20 for travel expenses incurred by his attorney in attending four separate depositions scheduled by defendant, one of which was out of state. The trial court in a very thoughtful and well reasoned memorandum denied this item as well as plaintiff's claim for separate attorney fees in attending these depositions. While I agree with the analysis as to disallowance of attorney fees, see Gregory v. Eastern New Mexico University, 81 N.M. 236, 465 P.2d 515 (Ct.App. 1970), I disagree as to travel expense. Both the trial court and the majority rely on language in State v. Lujan, 43 N.M. 348, 93 P.2d 1002 (1939). Lujan was not a worker's compensation case. Absent any case on point, we must examine the statute involved in light of the total statutory scheme of the Act. In doing so it is helpful to briefly mention the discovery orders and order authorizing independent physical examination of plaintiff.

With its answer defendant filed a motion for discovery to depose plaintiff and the doctors who had examined plaintiff and also filed a notice to take the deposition of Dr. Sidney Schultz. An order was entered authorizing this discovery "at the deposition cost * * *" of defendant. Subsequently, the parties filed a joint motion for discovery which enlarged defendant's earlier motion and provided for the full range of discovery by either side. The motion stated, "Defendant is to pay the cost of all discovery, pursuant to NMSA 1978, § ·52–1–34, including, specifically, the cost of depositions scheduled by either party and plaintiff's copy of any deposition taken." The order authorizing the additional discovery tracks the language of the joint motion. Neither the joint motion nor the order identifies any specific witness or what evidence is needed; it states only that "good cause exists for the requested discovery and that the evidence to be obtained thereby will probably be material to the issues of this case."

Defendant filed a motion asking the court to direct plaintiff to submit to physical examination by a doctor of defendant's choice who practiced in Pueblo, Colorado. Plaintiff objected since the physician was not licensed in New Mexico, relying on § 52–1–51B. The trial court entered an order granting defendant's motion, thereby requiring plaintiff to travel to Pueblo for the examination. It was the deposition of this same physician scheduled by defendant that resulted in a claim of $138 travel expenses incurred by plaintiff's attorney in attending that deposition.

Whether or not the trial court could require plaintiff to submit to a physical examination out of state by a physician not licensed in New Mexico under § 52–1–51 presents an interesting question, but it is not before us on this appeal. Assuming the trial court could require such an examination, the interpretation given § 52–1–34 by the majority would foreclose plaintiff from representation at that deposition, if he could not afford to pay the travel expenses.

What if defendant schedules depositions all over the country, or if the injured party dies and his treating physician moves a great distance either within or without the state? The employer and its insurance carrier would face little difficulty in having counsel present, but that would ordinarily not be true for an injured worker. The following language in § 52–1–34 is unmistakably clear and would, in my opinion,

permit a trial court in appropriate cases to allow travel expenses to plaintiff's attorney in attending depositions:

> The cost and expense of any interrogatory, discovery procedure or deposition ordered by the court shall be paid by the defendants in the claim or action and in no event shall any unsuccessful claimant be responsible for the cost or expense of any interrogatory, discovery procedure or deposition ordered by the court.

Of course, the trial court can and should at any § 52–1–34 hearing carefully consider the need for any discovery, the alternatives available, the cost and expense involved, as well as the delay that any questionable discovery might cause. It would violate the statutory scheme of the Workmen's Compensation Act to impose upon the injured worker travel expenses necessarily incurred by his counsel in order to adequately present his claim.

Based on my interpretation, I would remand so the trial court could reconsider travel expenses as a proper item under § 52–1–34. This would not require allowance in all instances, such as depositions taken in Albuquerque, but would enable the court to award such travel expenses as would be appropriate.